*ACOSTA* vs. *ROBIN.*

APPEAL from the court of the parish and city of New-Orleans.

PORTER, J. delivered the opinion of the court. The contest in this case arises out of the conflicting pretensions of the father and mother of a natural child—each claim the right of having the possession and care of it. The parish judge decided against the petitioner, and he appealed.

The natural father can't compel the mother of a natural child to give up to him the possession of such child. There is no tutorship until the death of the father or mother.

The evidence shews that the child was acknowledged by the father, who was a party to the act of baptism, in which he is stated to be such. It is also shewn, that the parties lived for years in a state of concubinage. The defendant has urged that the acknowledgement of the father does not make proof against her. This is true, but taking the whole proof in the

case, there is little doubt left in our minds, that the petitioner is the father of the child claimed in the petition. *Civ. code*, 48, *art.* 27.

Considering him such, the next question is, has he the right in law to the care of his natural child, in opposition to the mother? This is the first time in our experience that the question has been presented to our courts, but it is not a novel one in our jurisprudence It has been long settled there.

In support of the pretentions of the appellant it has been urged that the father is the natural tutor of his child. But in our judgment there can be no tutor to a child while the father and mother are alive. The first law of the 16th title of the 6th *Partida* declares *tutela*, in latin to be that guardianship which is given over minor *orphan* children, not minors alone, as stated in *Moreau & Carleton's* translation of the law. The words are *tutela tanto quiére dicer en latin como guarda en romance, que es dada é otorgada al huerfano libre, menor de catorce anos.* The commentators on this law, understand it as conferred only for children, who have lost father, or mother, or both. Our code declares tutorship

by nature to be the right of the surviving father, or mother, on the dissolution of the marriage by the death of one of them, to be tutor of the children.    It contemplates the father to act in another character during the marriage, and calls him the administrator of the estate of his minor children.    The opinion of the French commentators on the articles of the Napoleon code, which are the same as ours on this subject, is that there is no tutorship until the death of the father or mother.    *C. code,* 58, *art.* 5 & 6, *Paillette, on the code Napoleon, art.* 389, *Toullier, vol.* 2, *liv.* 1, *tit.* 10, *no.* 1090.

Eastern Dist
*January* 1829

ACOSTA
*vs.*
ROBIN

The right therefore set up in this instance in behalf of the father, can derive no support from the laws relating to tutorship; if it exist at all, it must be found in that which treats of the paternal power.    *La patria potestad.*

But we are satisfied that it does not confer any such power on the father of bastard children even when acknowledged by them.    It did not do so in Rome, where the authority of parents was carried further than in any other civilised country.    The institutes of Justinian declare, that the children whom we have under our power are those which are born in le-

gitimate marriage.   The digest has an express provision that natural children cannot be brought under the paternal authority. (*Patri_ am potestatem.*)   *The 2d law of the 17th title of the 4th Partida*, provides, that natural children are not in the power of the father as legitimate children are, and the Spanish commentators state their law to be in conformity with this provision.   *Partidas* 4, *tit.* 17, *law* 2; *Febrero, p.* 1, *cap.* 12, §3, *no.* 17. *Institutes lib.* 1, *tit.* 9, *digest, lb.* 1, *tit.* 6, *no.* 11 *Merlin repertoire, verbo puissance paternelle*, 343.

The case was argued before us on the provisions of our code alone: we have gone into this examination of the law as it previously stood, to shew more clearly the construction we should put on that provision of our code which declares "that bastards are not submitted to paternal authority, even where they have been legally acknowledged;" and believing as we do, that this provision (which is not found in the Napoleon code) was taken from the laws of Spain, & introduced in conformity with the doctrine established there, we think there cannot be a doubt that it repels the

demand made by the petitioner. *Code* 56,
59.

Toullier, in commenting on the Napoleon code which repealed the civil law, and contains no provision such as that first cited from ours, seems to consider that in tender age the child should be confided to the mother, but that as it advances in life the reasons in favour of her having the possession are not so conclusive. He considers it a question left to the prudence of the magistrate under all the circumstances of the case, and that the right should be conferred on either father or mother, as the interest of the minor may dictate. If we had such a discretion, the facts of this case would induce us to prefer the mother.

There is a claim in the petition for one thousand dollars, in case the father cannot get the child: we doubt much whether two such demands can be joined; but admitting they could, the evidence does not authorise judgment in his favour.

It is therefore ordered, adjudged, and decreed, that the judgment of the parish court be affirmed with costs.

*Rodrigues* for the plaintiff—*Moreau* for the defendant.